**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. ______________

BURGER KING COMPANY LLC,

Plaintiff,

v.

J.F.M. 6090, INC.; JFM SPRING, LLC; JFM SPARTA, LLC; and RANJANA JETHWA,

Defendants.

_____________________________________________/

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff, Burger King Company LLC ("BKC") files this Complaint and sues Defendants J.F.M. 6090, Inc. ("JFM 6090"), JFM Spring, LLC ("JFM Spring"), JFM Sparta, LLC ("JFM Sparta") and Ranjana Jethwa ("Jethwa") (collectively "Defendants") and states:

1. This is an action to enjoin Defendants' unauthorized use of BKC's valuable trademarks and service marks in connection with their unlawful operation of restaurants, which are now called "Jumbo King Burger," but still utilize BKC's trademarks, in violation of the Lanham Act and their agreements' post-termination covenant not to compete.

2. Through this action, BKC also seeks damages against Defendant Jethwa[1] under the Lanham Act and the agreements between the parties.

**THE PARTIES**

3. Plaintiff BKC is a Florida limited liability company with its principal place of

---

[1] Pursuant to the Order on Creditor Burger King Company, LLC's Motion for Relief From Automatic Stay to Seek Injunctive Relief issued by the United States Bankruptcy Court for the District of New Jersey in *In re: J.F.M. 6090, Inc., et al.*, Case No. 26-15123 (Bankr. D.N.J.), damages are only being sought against Defendant Ranjana Jethwa.

business in Miami, Florida.

4. The sole member of BKC is Burger King Corporation, a Florida corporation with its principal place of business in Florida.

5. Defendant JFM 6090 is a New Jersey corporation with its principal place of business in Cedar Grove, New Jersey. Pursuant to the schedules filed in JFM 6090's bankruptcy case, Defendant Jethwa is the sole owner of JFM 6090.

6. Defendant JFM Spring is a New Jersey limited liability company with its principal place of business in Paterson, New Jersey. Pursuant to the schedules filed in JFM Spring's bankruptcy case, Defendant Jethwa is the sole member of JFM Spring.

7. Defendant JFM Sparta is a New Jersey limited liability company with its principal place of business in Sparta, New Jersey. Pursuant to the schedules filed in JFM Sparta's bankruptcy case, the two members of JFM Sparta are Defendant Jethwa and Jethwa Foods, LLC. Defendant Jethwa is the sole member of Jethwa Foods, LLC.

8. Defendant Jethwa is a citizen and resident of New Jersey.

## JURISDICTION AND VENUE

9. BKC, the franchisor of the BURGER KING® brand, operates and franchises restaurants throughout the world, including the United States that are involved in, among other things, the sale of selected foods and beverages. Founded over 70 years ago, BKC has approximately 20,000 franchised restaurants in the world.

10. BKC's franchise operations are conducted and supervised from its world headquarters located in Miami, Florida. BKC and each of the Defendants have carried on a continuous course of direct communications by mail, e-mail, and by telephone through BKC's headquarters in Miami, Florida.

11. The course of dealing between BKC and its franchisees and licensees, including each of the Defendants, shows that decision-making authority is vested in BKC's headquarters in Miami, Florida.

12. Each of the Defendants voluntarily entered into contractual relationships with BKC which envisioned continuing and wide-reaching contacts with BKC at BKC's headquarters in Miami, Florida.

13. Each of the Defendants have purposefully availed themselves of the benefits and protection of Florida law by entering into agreements with BKC which expressly provide that Florida law will govern any disputes among the parties.

14. Each of the Defendants have breached agreements which were to be performed in Florida due to their failure to immediately cease use of the BURGER KING® trademarks and system after certain franchise agreements expired or were terminated, their violation of post-termination restrictive covenants, including covenants not to compete, and their failure to comply with their obligation to deliver documents to BKC following termination. These breaches and Defendants infringement of BKC's Marks have caused damage to BKC at its headquarters in Miami, Florida.

15. This Court has jurisdiction over this action based upon:

a. Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1337, and 1338(a), for the claims arising out of Defendants' violations of Sections 32, and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a); and

b. 28 U.S.C. § 1338(b), and the doctrine of supplemental jurisdiction as codified in 28 U.S.C. § 1367, for the claims arising out of Defendants' breach of contract and common law unfair competition.

16. Venue is proper in this Southern District of Florida pursuant to 28 U.S.C. § 1391 and the forum selection clause agreed to by the parties in their written agreements. In the parties' agreements, Defendants agreed that the United States District Court for the Southern District of Florida shall be the venue and exclusive proper forum in which to adjudicate any case or controversy arising, either directly or indirectly, under or in connection with the agreements. Additionally, Defendants agreed not to contest or challenge the jurisdiction or venue of this Court. The parties' agreements are governed by Florida law and bear a substantial relationship to Florida, where BKC is a resident and is headquartered.

## FACTUAL BACKGROUND

### A. BKC'S Trademarks

17. To identify the source, origin and sponsorship of BKC's facilities, products, and services, BKC has extensively employed, caused to be advertised and publicized throughout the United States (and elsewhere) certain distinctive symbols as trademarks and service marks (the "Marks"). BKC owns and was the first to adopt and use the Marks as trademarks and services marks and all right, title, and interest in and to the Marks and the design, décor, and image of BURGER KING® restaurants remains vested solely in BKC in Miami, Florida.

18. BKC operates and franchises BURGER KING® restaurants using the Marks on signs, menu boards, posters, uniforms, packaging, cups, and other items in advertising to the public through television, print media, and the internet.

19. Set forth below is an abbreviated listing of the Marks registered to BKC in the United States Patent and Trademark Office:

| Trademark | Status | Application Date | Registration Number | Registration Date | Class |
|---|---|---|---|---|---|
| BURGER KING | Registered | 09/09/1968 | 869775 | 05/20/1969 | 29, 32 |
| BURGER KING | Registered | 03/12/2007 | 3355280 | 12/18/2007 | 43 |

| Trademark | Status | Application Date | Registration Number | Registration Date | Class |
|---|---|---|---|---|---|
| BURGER KING & Crescent Design | Registered | 03/08/1999 | 2428846 | 02/13/2001 | 42 |
| BURGER KING & Crescent Design | Registered | 11/12/2002 | 2755927 | 08/26/2003 | 43 |
| BURGER KING & Hamburger Design | Registered | 02/20/1998 | 2262585 | 07/20/1999 | 14, 25 |
| BURGER KING & Hamburger Design | Registered | 05/27/1969 | 901311 | 10/20/1970 | 42 |
| BURGER KING & Hamburger Design (Color, Red & Orange) | Registered | 02/09/1976 | 1057250 | 01/25/1977 | 42 |
| BURGER KING & Hamburger Refresh Design | Registered | 05/01/2020 | 6397840 | 06/22/2021 | 29, 30, 43 |
| BURGER KING & Hamburger Refresh Design (color) | Registered | 05/01/2020 | 6397841 | 06/22/2021 | 29, 30, 43 |
| BURGER KING YOUR WAY & Hamburger Refresh | Registered | 12/18/2020 | 6702821 | 04/12/2022 | 43 |
| KING JR | Registered | 11/18/2015 | 5392316 | 01/30/2018 | 29, 30, 43 |
| KING DEAL | Registered | 06/23/2009 | 3808360 | 06/22/2010 | 43 |
| WHOPPER | Registered | 09/09/1968 | 899775 | 09/29/1970 | 29 |
| WHOPPER | Registered | 09/03/2009 | 3736973 | 01/12/2010 | 30 |
| WHOPPER | Registered | 07/29/2009 | 3736954 | 01/12/2010 | 43 |

20. The registration of the Marks are currently in full force and effect, and BKC has given notice to the public of the registration of the Marks as provided in 15 U.S.C. § 1111.

21. Pursuant to agreements between BKC and its franchisees or licensees, including Defendants, BKC grants a limited license and authority to use and display the Marks, but only in such manner and at such locations and times as are expressly authorized by BKC.

22. In no event is a franchisee or licensee authorized to use the Marks after the expiration of termination of its franchise agreement or license agreement. Such unauthorized use is expressly prohibited under the terms of the BKC franchise agreements and license agreements, including the Defendants' agreements with BKC.

23. BKC and its franchisees have spent many millions of dollars in the United States and abroad advertising and promoting BURGER KING® restaurants, services, and products.

24. The substantial investment made in the Marks has resulted in valuable goodwill for the Marks in the United States and elsewhere and for the restaurants, products, and services bearing those Marks. BKC's products and services have met with popular approval and, as a result of BKC's extensive sales, advertising, promotion, and publicity, the public throughout the world is familiar with the Marks. The products and services associated with the Marks are understood by the public to be produced, marketed, sponsored, supplied by and/or affiliated with BKC.

**B. <u>The Burger King System</u>**

25. BKC has developed a comprehensive restaurant operating system (the "System") for all BKC franchisees and licensees worldwide in order to protect the image of the BURGER KING® restaurants and to ensure uniform, high-quality standards. The detailed "Brand Standard and Procedures" of the System are set forth in BKC's Operating Standards Manual (the "OPS Manual").

26. Every BKC franchisee and licensee is required by its agreement to operate its licensed restaurant in accordance with the OPS Manual. The OPS Manual sets forth in detail the

mandatory BURGER KING® restaurant operating standards, specifications, and procedures, including rules governing areas such as food preparation, handling, cleanliness, health, sanitation, quality, and speed of service. In addition to these strict quality, service, and cleanliness requirements, the OPS Manual prescribed specified training procedures to ensure that these requirements are met. The OPS Manual contains confidential BKC information, which a franchisee is permitted to have only during the term of the franchise agreement or license agreement.

27. BKC offers a broad range of services to its franchisees and licensees in order to monitor and assist their compliance with these standards. This enables BKC to safeguard the integrity of BURGER KING® restaurants, the System, and the Marks.

28. Integral to BKC's compliance and assistance program are periodic inspections and consultation undertaken by personnel specially trained to observe and advise in all areas of restaurant operating procedure.

29. As a result of its substantial expenditures of money and effort in developing and implementing the System, BKC has established a high reputation and positive image with the public as to the quality of products and services available at BURGER KING® restaurants, which reputation and image have been, and continue to be, valuable assets of BKC. BKC strives to maintain that reputation through its careful selection of franchise owners, facilities and locations, and its careful supervision over the manner and quality of its restaurant service.

## C. <u>The Franchise Agreements and Guaranties</u>

### 1. JFM 6090's Agreements

30. JFM 6090 previously owned and operated BURGER KING® restaurant No. 6090 located at 12-14 Spruce Street, Paterson, New Jersey 07501 (the "Paterson Restaurant") pursuant

to a franchise agreement dated February 26, 2015 (the "Paterson Franchise Agreement"). A true and correct copy of the Paterson Franchise Agreement is attached as Exhibit "A."

**2. JFM Sparta's Agreements**

31. JFM Sparta previously owned and operated BURGER KING® restaurant No. 1877 located at 49 Sparta Avenue, Sparta, New Jersey 07871 (the "Sparta Restaurant") pursuant to a franchise agreement dated July 13, 2015 (the "Sparta Franchise Agreement"). A true and correct copy of the Sparta Franchise Agreement is attached as Exhibit "B."

32. Contemporaneously with the execution of the Sparta Franchise Agreement, Jethwa executed a personal guaranty (the "Sparta Guaranty") in which she absolutely and unconditionally guaranteed the payment and performance of each and every obligation of JFM Sparta to BKC under the Sparta Franchise Agreement. A true and correct copy of the Sparta Guaranty is attached as Exhibit "C."

**3. JFM Spring's Agreements**

33. JFM Spring previously owned and operated BURGER KING® restaurant No. 10481 located at 160 Spring Valley Marketplace, Spring Valley, New York 10977 (the "Spring Valley Restaurant") (the Paterson Restaurant, Sparta Restaurant and Spring Valley Restaurants shall be referred to collectively as the "Restaurants") pursuant to a franchise agreement dated July 27, 2015 (the "Spring Valley Franchise Agreement") (the Paterson Franchise Agreement, the Sparta Franchise Agreement and the Spring Valley Franchise Agreement are referred to collectively as the "Franchise Agreements"). A true and correct copy of the Spring Valley Franchise Agreement is attached as Exhibit "D."

34. Contemporaneously with the execution of the Spring Valley Franchise Agreement, Jethwa executed a personal guaranty (the "Spring Valley Guaranty") (the Sparta Guaranty and

Spring Valley Guaranty shall be referred to collectively as the "Guaranties") in which she absolutely and unconditionally guaranteed the payment and performance of each and every obligation of JFM Spring to BKC under the Spring Valley Franchise Agreement. A true and correct copy of the Spring Valley Guaranty is attached as Exhibit "E."

**D. The Franchise Agreements' Restrictions on the use of the Marks and Covenants not to Compete**

35. Each of the Franchise Agreements sets forth various obligations, restrictions and other covenants with which a franchisee must comply upon the termination or expiration of a Franchise Agreement.

36. Terminated and expired franchisees are prohibited from identifying themselves as either current or former BURGER KING® franchisees, from using any of BKC's trade secrets, promotional materials, the Marks, or any mark confusingly similar.

37. Each of the Franchise Agreements requires that upon termination, the Defendants must immediately stop using the Marks and return to BKC the Ops Manual and all other materials containing trade secrets and proprietary information, and otherwise de-identify the Restaurants so that they are no longer recognizable as BURGER KING® locations. Specifically, Defendants were required to remove all BURGER KING® signage, trade dress, branding, menus, uniforms, and other indicia of a BURGER KING® restaurant.

38. Terminated and expired franchisees are further required, upon termination or expiration of their BURGER KING® franchise agreement(s), to immediately make such removals or changes in signs and the building as BKC shall request so as to effectively distinguish the building and premises from its former appearance and from any other BURGER KING® restaurant.

39. Additionally, each of the Franchise Agreements contains restrictive covenants (the

"Restrictive Covenants") barring the Defendants, for one year after termination, from owning or operating any non-Burger King® hamburger business at or within two miles of the respective Restaurants. Paragraph 19 of each Franchise Agreement provides:

> Franchisee covenants and agrees for itself, its parent, subsidiaries and affiliated companies that during the Term of this Agreement they will not own, operate or have any interest in any hamburger business except other franchised BURGER KING Restaurants. Franchisee further covenants and agrees that for a period of one (1) year after any sale, assignment, transfer, termination or expiration of this Agreement, these entities will not own, operate or have any interest in any hamburger business, except other franchised BURGER KING Restaurants, either at or within two (2) miles of the Premises.

40. BKC has many legitimate business interests justifying the enforcement of the post-term covenants not to compete, including its desire to protect confidential information that otherwise does not qualify as trade secrets including proprietary sourcing arrangements, operational procedures, marketing strategies and confidential business systems. Absent enforcement of the covenant not to compete, Defendants could exploit this proprietary information to BKC's detriment by operating a competing hamburger restaurant.

41. Similarly, BKC provides its franchisees with extraordinary and specialized training in its proprietary business systems, operational standards, food safety protocols, and management techniques. This training represents a substantial investment by BKC, and enforcement of the Franchise Agreement's restrictive covenants prevents Defendants, as former franchisees, from deploying that training for the direct competitive benefit of their competing business

42. Moreover, BKC has a legitimate business interest in protecting the viability of its franchise system and preventing franchisees from breaching their franchise agreements. Enforcing the non-compete provision will further protect BKC's ability to sell its franchises, as the existence of Defendants' unauthorized competing Restaurants will make it more difficult or impossible to sell franchises to a replacement franchisee.

43. Enforcing the non-compete will also protect surrounding BURGER KING® franchisees from unfair competition by former franchisees.

44. The limited duration and the limited geographical scope of the post-termination covenant not to compete are narrowly tailored and apply only to the two-mile radius around the Restaurants for a period of one year.

**E. <u>The Termination of the Franchise Agreements and the Entry into the Settlement Agreement and Limited License to Operate Restaurants</u>**

45. To resolve certain disputes between BKC, Defendants and certain related parties, on July 31, 2023, BKC and Defendants entered a settlement agreement (the "Settlement Agreement"). A true and correct copy of the Settlement Agreement is attached as Exhibit "F."

46. Pursuant to the Settlement Agreement, each of the Franchise Agreements was deemed terminated by mutual agreement of the parties.

47. Notwithstanding the termination of the Franchise Agreements, Defendants were given a limited license to operate the Restaurants in accordance with and on same the terms of the Franchise Agreement (other than the original term and successor or renewal rights) through a date certain (the "Sale Date") so as to provide Defendants an opportunity to sell the Restaurants.

48. In the Settlement Agreement, Defendants all agreed that they were bound by all of the terms of the Franchise Agreements except as specifically modified by the Settlement Agreement.

49. Pursuant to the Settlement Agreement, the original Sale Date was May 31, 2025. The Settlement Agreement was amended on June 3, 2025, to extend the Sale Date to July 30, 2025, and thereafter amended on September 3, 2025, to extend the Sale Date to September 30, 2025. The Sale Date was thereafter extended to April 1, 2026, by email dated March 13, 2026.

50. Based on the parties' extensions, the final Sale Date was April 1, 2026.

### F. <u>The Termination of the Settlement Agreement and Defendants' Post-Termination Competition and Unauthorized Use of BKC's Marks</u>

51. Defendants did not sell the Restaurants by the April 1, 2026, Sale Date.

52. By letter dated April 2, 2026, BKC informed Defendants that they were in default of the Settlement Agreement as a result of their failure to sell the Restaurants by the Sale Date, and that Defendants were being provided a cure period of 60 days (i.e. by June 1, 2026) to comply with the Settlement Agreement after which time the Settlement Agreement (and the limited license granted thereto) would be terminated.

53. On May 5, 2026, JFM 6090 and JFM Sparta each filed for chapter 11 bankruptcy in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") and on May 11, 2026, JFM Sparta filed for chapter 11 bankruptcy in the Bankruptcy Court. Due to the bankruptcy filings of JFM 6090 and JFM Spring on May 5, 2026, and the bankruptcy filing of JFM Sparta on May 11, 2026 (collectively the "Bankruptcy Proceedings"), and by operation of section 108(b) of the Bankruptcy Code, the rights of JFM 6090 and JFM Spring to operate as Burger King® licensees expired on July 4, 2026, and the right of JFM Sparta to operate as a Burger King® licensee expired on July 10, 2026.

54. Indeed, JFM Sparta, JFM 6090 and JFM Spring (collectively the "Corporate Defendants") all stated in a July 20, 2026, filing with the Bankruptcy Court that "[t]he Debtors, through [Jethwa], reached an agreement to continue operating as Burger King locations while the Debtors sought a sale. Those agreements expired in July 2026."

55. Notwithstanding the termination of the Franchise Agreements and expiration of the Settlement Agreement and the limited license granted thereto, Defendants continued to operate the Restaurants as BURGER KING® restaurants without any authorization from BKC.

56. On July 31, 2026, BKC notified Defendants that their continued unauthorized use

of the Burger King® trademarks constituted, among other things, willful trademark infringement under the Lanham Act, a blatant violation of violation of the post-termination covenants of the Franchise Agreements, and caused irreparable harm to the goodwill and reputation of the Burger King® brand as well as trademark dilution.

57. As such, through its July 31, 2026, letter, BKC demanded Defendants to (a) immediately cease and desist from identifying as a Burger King® restaurant and the use of the Burger King® Marks and intellectual property in any form, (b) deidentify the premises by removing all Burger King® signage, and (b) comply fully with all post termination covenants of the franchise agreements.

58. Following its receipt of the July 31, 2026 demand letter, JFM 6090 changed the name of the Paterson Restaurant to “Jumbo King Burger.”

59. As of at least August 14, 2026, Defendants JFM Sparta, JFM Spring and Jethwa continued to operate the Sparta Restaurant and Spring Valley Restaurant as if they were licensed BURGER KING® restaurants, including through the unauthorized use of some of BKC’s Marks, such as the BURGER KING® marks and the BURGER KING & Hamburger Refresh Design mark (the “Bun Mark”).

60. More recently, following additional demands from BKC, Defendants started operating all of the Restaurants using the name “Jumbo King Burger,” although Defendants still use BKC’s Marks on certain items at the Restaurants such as food wrappers, sauce containers and receipts.

61. For example, as reflected in the images below, as of September 3, 2026, at the Sparta Restaurant, Defendants JFM Sparta and Jethwa sold mozzarella sticks in packaging bearing the Bun Mark and provided marinara sauce in a container bearing the Bun Mark. Likewise, the

receipt provided to the customer bore the Bun Mark and the WHOPPER® mark.










62. Defendants have adopted the following website in connection with the operation of their competing "Jumbo King Burger" restaurants: www.jumbokingburgers.com ("Defendants' Jumbo King Burger Website").

63. Additionally, on Defendants' Jumbo King Burger Website, Defendants advertise that they are expanding through licensing "Jumbo King Burger."

64. Members of the consuming public have expressed confusion regarding the

relationship between the Defendants' "Jumbo King Burger" restaurants and the BURGER KING® brand.

65. Further reflecting Defendants' desire to trade on BKC's goodwill under a confusingly similar name, on June 8, 2026, Jethwa filed U.S. Trademark Application Serial No. 99871702 in her individual capacity with the United States Patent and Trademark Office for the mark "JUMBO KING BURGER" for "fast food restaurant services; restaurant services; restaurant services in the nature of a fast food burger restaurant."

66. On July 29, 2026, BKC filed a Letter of Protest with the USPTO challenging the application on the basis that "JUMBO KING BURGER" is confusingly similar to BKC's senior BURGER KING® marks in violation of Section 2(d) of the Trademark Act.

**G. <u>Likelihood of Consumer Confusion and Deception</u>**

67. Despite the termination and expiration of the Franchise Agreements and the Settlement Agreement, Defendants have not tendered to BKC or removed all BURGER KING® items bearing the Marks, name, symbols, or slogans, or which are otherwise identified with BURGER KING® restaurants and are located at the Restaurants, from all of the Restaurants.

68. Although Defendants now operate the Restaurants as "Jumbo King Burger" restaurants, Defendants continue to make the unauthorized use of some of BKC's Marks.

69. The use of the name "Jumbo King Burger" compounds consumer confusion. The "Jumbo King Burger" name appropriates two of the three words of BKC's iconic mark, and Defendants' Jumbo King Burger Website adopts a logo treatment, typography and overall look and feel that closely resembles BKC's trade dress, all while listing the very address at which Defendants operated the Restaurants.

70. Defendants also compound customer confusion by selling items at the Restaurants

which appear identical in build and have similar sounding names. For example, before the termination of the Settlement Agreement, Defendants offered and sold burgers at the Restaurants called "King Jr." and "Bacon King." At their "Jumbo King Burger," Defendants now offer and sell items called "King Burger" and "Jumbo King Bacon."

71. The operation of their former BURGER KING® restaurant as "Jumbo King Burger" restaurants is clearly designed to confuse consumers.

72. The continued use and display of the Marks or any items associated with the BURGER KING® name, symbols or slogans at the Restaurants is without BKC's license or consent.

73. Upon seeing the familiar Marks and imitations of the Marks, through Defendants' unauthorized display thereof, consumers will be deceived into concluding that the Restaurants are sponsored or endorsed by BKC and bear the Marks pursuant to BKC's authority and permission.

74. There have already been multiple documented instances of consumer confusion, with some consumers expressing a belief that Defendants' "Jumbo King Burger" restaurant in Paterson, New Jersey, is really a licensed BURGER KING® restaurant which has only temporarily changed its name and signage.

75. Such impressions are calculated to and will have a material influence on customers' purchasing decisions, as well as BKC's goodwill, reputation, and appeal.

76. By reason of the foregoing, BKC has suffered damages in an amount presently unknown yet substantial.

77. BKC no longer is the source or sponsor of the Restaurants and does not endorse said Restaurants, or the products and services provided therein, has not authorized Defendants to use the Marks to identify the terminated or expired franchise facilities, products, or services and

has protested expressly against such use.

78. By virtue of termination and expiration of the Franchise Agreements and the Settlement Agreement, BKC is unable to control the nature and quality of the goods and services that Defendants provide at the Restaurants.

79. Jethwa, through the operation of the Corporate Defendants, and acting in her capacity as the sole owner and member of the Corporate Defendants, has actively and knowingly used the Marks and imitations of the Marks following the termination of the Franchise Agreements and Settlement Agreement. Jethwa directs and controls the operation of the Corporate Defendants and the Restaurants and is responsible for marketing, which includes the unauthorized use of the Marks and colorable imitations of the Marks. Jethwa actively and knowingly caused the unlawful use of the Marks and the colorable imitations and personally took part in the infringing use of the Marks and colorable imitations through, among other things and her decision to utilize colorable imitations of the Marks in connection with her "Jumbo King Burger" business.

80. By reason of the foregoing, BKC has suffered damages in an amount presently unknown yet substantial.

81. BKC will suffer serious, immediate, and irreparable harm if Defendants' willful infringement of the Marks at the Restaurants is not immediately enjoined. BKC's goodwill and reputation will suffer drastically by virtue of the public's identification of BKC with the management and operation of Restaurants.

82. BKC exercises strict quality control over every phase in the marketing of BURGER KING® products and services, from specification of ingredients, to the supervision of food preparation and handling, to the maintenance of strict standards as to cleanliness, health, sanitation, and quality of service. The carefully nurtured image which BKC now enjoys will be irretrievably

injured by any association with the Restaurants, which are no longer subject to BKC's control and supervision.

83. Defendants' sale of products and services under the Marks and under colorable imitations of the Marks at the Restaurants poses an immediate threat to the distinct, exclusive image BKC has created at great expense for its franchisees. BURGER KING® restaurants, services, and products are known by the Marks which are emblematic of their distinctive source. BURGER KING® restaurants enjoy a special appeal to consumers which will be diluted by the existence of infringing restaurants with products and services bearing the distinctive Marks. The intangible, but commercially indispensable, value that BURGER KING® restaurants now enjoy will be severely undermined by the operation of the Restaurants, which make authorized use of the Marks.

84. Consumer confusion as to the source or sponsorship of the Restaurants bearing the Marks will be attended not only by an inevitable loss of product distinctiveness, image, and goodwill, but also will cause a diversion from sales from BKC. The economic injury to BKC resulting from such diversion is incalculable, and as such, is an additional source of irreparable harm.

85. Pursuant to the Settlement Agreement, Defendants expressly acknowledged and agreed that monetary damages would be inadequate to remedy the harm caused by operating any of the Restaurants after termination of the Settlement without BKC's written authorization, and that BKC is entitled to injunctive relief to enforce the terms of the Franchise Agreements.

86. The parties agreed in writing that in litigation to enforce the terms of the Settlement Agreement, BKC, as the prevailing party, shall be paid by Defendants all costs, including attorneys' fees, incurred as a result. BKC is only seeking its fees and costs against Defendant Jethwa.

87. BKC has engaged undersigned counsel and has agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the agreements between BKC and Defendants.

88. All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

89. By order dated September 3, 20256, the Bankruptcy Court granted BKC stay relief to file this Complaint and to obtain against Defendants JFM 6090, JFM Spring and JFM Sparta the injunctive relief sought herein.

**COUNT I – LANHAM ACT INFRINGEMENT**
**(Against All Defendants)**

90. BKC re-alleges and incorporates Paragraphs 1 through 89 above as if fully set forth herein.

91. Defendants' acts constitute infringement of BKC's registered trademarks and service marks in violation of Section 32 of Lanham Act, 15 U.S.C. § 1114.

**COUNT II – LANHAM ACT FALSE DESIGNATIONS**
**(Against All Defendants)**

92. BKC re-alleges and incorporates Paragraphs 1 through 89 above as if fully set forth herein.

93. Defendants' acts constitute false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**COUNT III – COMMON LAW TRADEMARK INFRINGEMENT**
**(Against All Defendants)**

94. BKC re-alleges and incorporates Paragraphs 1 through 89 above as if fully set forth herein.

95. Defendants' acts constitute unlawful trademark and service mark infringements under the common law.

**COUNT IV – COMMON LAW UNFAIR COMPETITION**
**(Against All Defendants)**

96. BKC re-alleges and incorporates Paragraphs 1 through 89 above as if fully set forth herein.

97. Defendants' acts constitute unfair competition under the common law.

**COUNT V – BREACH OF SETTLEMENT**
**(Against all Defendants)**

98. BKC re-alleges and incorporates Paragraphs 1 through 89 above as if fully set forth herein.

99. Defendants breached the Settlement Agreement by failing to comply with its post-termination obligations, including the post-termination covenant not to compete, the post-termination restriction on using the Marks, the post-termination obligation to de-identify the Restaurants and the post-termination obligation to return BKC's Ops Manual.

100. These breaches have directly and proximately caused loss and damage to BKC.

**COUNT VI – BREACH OF PATERSON FRANCHISE AGREEMENT**
**(Against all JFM 6090)**

101. BKC re-alleges and incorporates Paragraphs 1 through 89 above as if fully set forth herein.

102. Defendant JFM 6090 breached the Paterson Franchise Agreement by failing to comply with its post-termination obligations, including the post-termination covenant not to compete, the post-termination restriction on using the Marks, the post-termination obligation to de-identify the Restaurants and the post-termination obligation to return BKC's Ops Manual.

103. These breaches have directly and proximately caused loss and damage to BKC.

**COUNT VII – BREACH OF SPARTA FRANCHISE AGREEMENT**
**(Against all JFM Sparta)**

104. BKC re-alleges and incorporates Paragraphs 1 through 89 above as if fully set forth herein.

105. Defendant JFM Sparta breached the Sparta Franchise Agreement by failing to comply with its post-termination obligations, including the post-termination covenant not to compete, the post-termination restriction on using the Marks, the post-termination obligation to de-identify the Restaurants and the post-termination obligation to return BKC's Ops Manual.

106. These breaches have directly and proximately caused loss and damage to BKC.

**COUNT VIII – BREACH OF SPARTA GUARANTY**
**(Against Jethwa)**

107. BKC re-alleges and incorporates Paragraphs 1 through 89 and 105 through 106 above as if fully set forth herein.

108. Pursuant to the Sparta Guaranty, Jethwa irrevocably guaranteed the performance of, inter alia, each and every obligation and liability of JFM Sparta to BKC under the Sparta Franchise Agreement should JFM Sparta fail to perform such obligations.

109. The failure of Jethwa to ensure JFM Sparta's obligations under the Sparta Franchise Agreement constitutes a breach of the Sparta Guaranty.

110. These breaches have directly and proximately caused loss and damage to BKC.

**COUNT IX – BREACH OF SPRING VALLEY FRANCHISE AGREEMENT**
**(Against all JFM Spring)**

111. BKC re-alleges and incorporates Paragraphs 1 through 89 above as if fully set forth herein.

112. Defendant JFM Spring breached the Spring Valley Franchise Agreement by failing to comply with its post-termination obligations, including the post-termination covenant not to

compete, the post-termination restriction on using the Marks, the post-termination obligation to de-identify the Restaurants and the post-termination obligation to return BKC's Ops Manual.

113. These breaches have directly and proximately caused loss and damage to BKC.

**COUNT X – BREACH OF SPRING VALLEY GUARANTY**
**(Against Jethwa)**

114. BKC re-alleges and incorporates Paragraphs 1 through 89 and 112 through 113 above as if fully set forth herein.

115. Pursuant to the Spring Valley Guaranty, Jethwa irrevocably guaranteed the performance of, inter alia, each and every obligation and liability of JFM Spring to BKC under the Spring Valley Franchise Agreement should JFM Spring fail to perform such obligations.

116. The failure of Jethwa to ensure JFM Spring's obligations under the Spring Valley Franchise Agreement constitutes a breach of the Spring Valley Guaranty.

117. These breaches have directly and proximately caused loss and damage to BKC.

**DEMAND FOR ATTORNEYS' FEES AND COSTS FROM JETHWA**

The Franchise Agreements at issue in this litigation provide that the prevailing party is entitled to recover its attorneys' fees and costs. BKC hereby demands that it be reimbursed by Defendant Jethwa for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

**REQUEST FOR RELIEF**

WHEREFORE, Burger King Company LLC demands judgment against Defendants J.F.M. 6090, JFM Spring, LLC, JFM Sparta, LLC and Ranjana Jethwa for:

1. Preliminary and permanent injunctions enjoining Defendants, and all persons acting on their behalf, in concert with, or under their control, from:

(a) manufacturing, packaging, distributing, selling, advertising, displaying, or

promoting any product or service bearing any of the Marks, or any colorable imitation thereof at the Restaurants, including without limitation "Jumbo King Burger";

(b) displaying or using any of the Marks or any colorable imitation of the Marks including, without limitation, "Jumbo King Burger" to advertise or promote the sale of, or to identify, the Restaurants, or any product or service provided therein; and

(c) making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe the Restaurants and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized, or approved by BKC.

2. Preliminary and permanent injunctions directing Defendants and all persons acting on their behalf, in concert with them, or under their control to:

(a) recall and deliver to BKC all signs, banners, labeling, packaging, advertising, promotional display and point-of-purchase materials which bear, or make reference to, any of the Marks, or any colorable imitation of the Marks at the Restaurants;

(b) recall and deliver up to BKC on all copies and editions of the Ops Manual that are in their actual or constructive, direct or indirect, possession, custody or control, including all supplements and addenda thereto and all other materials containing restaurant operating instructions, restaurant business practices, or plans of BKC to the extent that there are any at the Restaurants; and

(c) allow BKC, at a reasonable time, to enter the premises of the Restaurants and make whatever changes, including removal of tangible assets, that are necessary to distinguish the premises from its appearance as a BURGER KING® restaurant.

3. Against Defendant Jethwa only, money damages, plus three times additional actual

damages BKC has sustained by reason of her trademark and service mark infringement and unfair competition, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

4. Against Defendant Jethwa only, punitive damages because of the willful nature of her actions;

5. Against Defendant Jethwa only, pre-judgment interest and BKC's reasonable attorneys' fees incurred in protecting its rights in this action in accordance with the terms of the parties' agreements, and because of the willful nature of the infringement, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

6. Against Defendant Jethwa only, compensatory damages and attorneys' fees and costs against her due to her breaches of the parties' agreements;

7. An order enjoining Defendants from owning, operating, or having any interest in any hamburger business, within a two-mile radius of the Restaurants for a one-year period from the date on which this Court first enters an injunction against Defendants;

8. An order directing Defendants to file with the Court, and to serve on BKC's counsel within ten days after service of any injunction or order issued herein, or within such a reasonable time as the Court shall direct, a report, in writing and under oath, setting forth in detail the manner in which they have complied with such injunction or order;

9. Against Defendant Jethwa only, all attorneys' fees, costs, disbursements, and expenses of this action;

10. All such other relief as this Court may deem just and proper.

Dated: September 10, 2026

Respectfully submitted,

*/s/ Aaron S. Blynn*
Michael D. Joblove, Esq.
Florida Bar No.: 354147
mdjoblove@venable.com
Aaron S. Blynn, Esq.
Florida Bar No.: 073464
asblynn@venable.com
VENABLE LLP
801 Brickell Avenue
Suite 1500
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
*Attorneys for Plaintiff Burger King Company, LLC*